UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

FILED

| | |
|---|---|
| Raymond A. Yancey, as Receiver<br>120 Tulane Drive<br>Alexandria, VA 22307 | ) ) ) )<br>**2016 JAN 15 P 4: 13**<br>CLERK US DISTRICT COURT<br>ALEXANDRIA, VIRGINIA |

Raymond A. Yancey, as Receiver            )
120 Tulane Drive                                      )
Alexandria, VA 22307                             )
                                                               )
          Plaintiff                                        )
                                                               )
vs.                                                           )      Case No.: 1:16-cv-51
                                                               )      JCC/MSN
                                                               )
International Fidelity Insurance Company,  )
One Newark Center, 20th Floor             )
Newark, NJ 07102                               )
     Serve: Registered Agent                )
               Ven S Radin                         )
               One Newark Center            )
               1111 Raymond Blvd, 20th Floor  )
               Newark, NJ  07102              )
                                                               )
Nationwide Electrical Services, Inc.        )
5627 Allentown Road, Suite 203           )
Camp Spring, MD  20746                   )
     Serve: Registered Agent                )
               John Young                        )
               5267 Allentown Road, Suite 203  )
               Camp Spring, MD  20746    )
                                                               )
John P. Young                                     )
1042 Savanna Drive                            )
La Plata, MD 20646-3287                    )
                                                               )
and                                                          )
                                                               )
R. Vaughn Herbert                              )
1315 Barberry Drive                           )
Edgewood, MD 21040-1130               )
                                                               )
          Defendants                                 )

## **COMPLAINT**

Plaintiff, Raymond A. Yancey ("Plaintiff" or "Receiver," under the authority granted

under the Receiver Order defined below), as Receiver in *BMO Harris Bank, N.A. v. Truland*

*Corp., et al.*, 14cv1187 (E.D. Va. 2014) (the "Receiver Action"), sues International Fidelity

Insurance Company, Nationwide Electrical Services, Inc., John P. Young, and R. Vaughn

Herbert, and alleges the following:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 754, 1332, and 1692 and

Rule 4(k)(1)(C), Federal Rules of Civil Procedure.  This action also is ancillary to the Receiver

Action against, among other entities, Truland Systems Corporation, Truland Walker Seal

Transportation, Inc., and Blumenthal Kahn Truland Electric, LLC.

## INTRODUCTION

2.      Truland Walker Seal Transportation, Inc. ("Truland Walker Seal") supplied labor

and materials as a licensed electrical subcontractor on a construction project known as the

University of Maryland, Prince Frederick Hall located in College Park, Maryland (the "UMD

Project").

3.      Truland Systems Corporation and/or its affiliate, Blumenthal Kahn Truland

Electric, (collectively, "Truland Systems"), supplied labor and materials as a licensed electrical

subcontractor on a construction project known as the MDTA I-95 Travel Plaza, Chesapeake

House (the "Chesapeake House Project").

4.      Truland Systems also supplied labor and materials as a licensed electrical

subcontractor on a construction project known as the MDTA I-95 Travel Plaza, Maryland House

(the "MD House Project").

5.      Truland Walker Seal and Truland Systems are collectively are referred to herein

as "Truland."

6.      The Chesapeake House Project and the MD House Project collectively are

referred to as the "Travel Plaza Projects."

2

7.      On or about July 21, 2014, Truland ceased operations and on July 23, 2014, Truland filed for voluntary relief and protection under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division ("Bankruptcy Court").  The case initially was docketed as Case No. 14-12773 and is now jointly administered with the case of *In re: The Truland Group, Inc.*, Case No. 14-12766-BFK.

8.      On September 4, 2014, the Bankruptcy Court entered an order granting BMO Harris Bank, N.A. ("BMO Harris") relief from the automatic stay and authorized BMO Harris to commence receivership proceedings against Truland ("Stay Lift Order").  (Case No. 14-12766-BFK, Docket No. 196.)  A true and correct copy of the Stay Lift Order is attached hereto and incorporated herein as Exhibit A.

9.      On September 9, 2014, BMO Harris filed a Complaint for Appointment of Receiver by Consent against Truland this Court ("District Court").

10.      On September 9, 2014, the District Court entered a Consent Order Appointing Receiver ("Receiver Order") wherein Raymond Yancey was appointed as receiver in the District Court proceeding ("Receiver") to, among other things "take charge, to have and to hold all of Truland and certain of its affiliate's property as described in the Stay Lift Order" ('Receivership Property')."  (Receiver Order, ¶ 1.)

11.      Pursuant to the Receiver Order, the Truland Systems Corporation affiliates whose property is included in the Receivership Property includes, without limitation, Truland.  A true and correct copy of the Receiver Order is attached hereto and incorporated herein as Exhibit B. A copy of the Receiver Order has been delivered to all Defendants.

12.      Paragraph 2 of the Receiver Order, states in relevant, part:

3

That Truland and all other persons, firms, corporations or other entities, whether or not claiming through or under Truland, who may be in possession of any of the Receivership Property, are hereby required and commanded to forthwith upon the demand of the Receiver, or his duly authorized agents, to turn over and deliver to the Receiver, or his duly authorized agents, all books of account, papers, deeds, contracts, bills, notes, stocks, bonds, accounts, money, machinery, equipment, merchandise or other property in his or their hands or under his or their control and related to the Receivership Property.

13.     The Receiver Order further expressly authorized the Receiver "to institute and prosecute all such claims, actions, suits, insurance matters and the like (except with respect to those claims, actions, suits, insurance matters and the like excluded by the Stay Lift Order) as may be necessary in his judgment for the proper protection of the Receivership Property. . . ."*Id* ¶ 7.

## PARTIES

14.     Plaintiff Raymond A. Yancey, Receiver, brings this action for the use and benefit of the Receivership Property pursuant to the Receivership Order. The Receiver individually is a citizen of the State of Florida and his principal place of business is in Virginia.

15.     Defendant International Fidelity and Insurance Company ("IFIC") is a corporation organized and existing under the laws New Jersey with a principal place of business of One Newark Center, 20th Floor, Newark, NJ 07102.  IFIC is a citizen of New Jersey.  IFIC conducted and transacted business in the State of Virginia at times relevant to this action or contracted to insure any person, property, or risk located within Virginia at the time of contracting.

16.     Defendant Nationwide Electrical Services, Inc. ("Nationwide") is a corporation organized and existing under the laws of Maryland with its principal place of business of 5627 Allentown Road, Suite 203, Camp Spring, MD  20746.  Nationwide is a citizen of Maryland. Nationwide conducted and transacted business in the State of Virginia at times relevant to this

4

action or caused tortious injury in Virginia by an act or omission outside this Virginia or regularly did or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in Virginia at times material to this action.

17.    Upon information and belief, Defendant John P. Young ("Young"), an individual, is the President and Chief Executive Officer of Nationwide, and resides at 1042 Savanna Drive, La Plata, MD  20646-3287.  Young is a citizen of Maryland.  Young conducted and transacted business in the State of Virginia at times relevant to this action or caused tortious injury in Virginia by an act or omission outside this Virginia or regularly did or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in Virginia at times material to this action.

18.    Upon information and belief, Defendant R. Vaughn Herbert ("Herbert"), an individual, is the Vice-President of Nationwide, and resides at 1315 Barberry Drive, Edgewood, MD  21040-1130.  Herbert is a citizen of Maryland.  Herbert conducted and transacted business in the State of Virginia at times relevant to this action or caused tortious injury in Virginia by an act or omission outside this Virginia or regularly did or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in Virginia at times material to this action.

## GENERAL ALLEGATIONS REGARDING UMD PROJECT

19.    Counts I and III, and V of this dispute arise out of work performed by Truland on the UMD Project.

20.    The UMD Project is owned by the State of Maryland, by and through the University of Maryland, College Park ("UMD Owner").

5

21.     The UMD Owner engaged Clark Construction Group, LLC ("Clark") as the General Contractor on the UMD Project.

22.     Clark entered into a contract with Nationwide for electrical subcontract work on the UMD Project ("Clark UMD Subcontract").

23.     Nationwide issued a Tiered Subcontract Agreement to Truland ("Truland UMD Subcontract") wherein Nationwide subcontracted a portion of its Clark UMD Subcontract work to Truland.  A true and correct copy of the Clark UMD Subcontract is attached hereto and incorporated herein as Exhibit C.

24.     On or about October 8, 2012, Truland began work on the UMD Project pursuant to the Truland UMD Subcontract.

25.     Truland performed work on the UMD Project for the benefit of Nationwide, Clark and the UMD Owner.

26.     Truland performed its work on the UMD Project in a timely and workmanlike manner.

27.     Truland performed its work on the UMD Project in accordance with the Truland UMD Subcontract.

28.     Upon information and belief, Truland's work on the UMD Project has not been rejected.

29.     Upon information and belief, Truland's work on the UMD Project has been accepted.

30.     Despite numerous requests and demands by Truland and the Receiver, the Receiver has not been paid for the work performed by Truland on the UMD Project.

31.     The initial amount of the Truland UMD Subcontract was $2,246,350.00.

6

32.     Truland supplied additional labor, materials and management support to assist Nationwide in the performance of its obligations under the Clark UMD Subcontract on a time and materials basis, with an agreed mark-up for overhead and profit of fifteen percent ("Extra Work").

33.     The amount of approved Extra Work performed by Truland is $3,447,405.86.

34.     The total adjusted price for the Truland UMD Subcontract is $5,820,182.44.

35.     Truland submitted payment applications for work, which included labor, services and materials provided to the UMD Project by Truland totaling $5,693,755.86.

36.     Upon information and belief, all of Truland's Extra Work performed on the UMD Project and was accepted and not rejected.

37.     Truland only received payments from Nationwide and Clark for its work and applied totaling $685,643.91, and $5,134,538.53 remains unpaid for work performed by Truland through July 24, 2014, on the UMD Project.

38.     Due to non-payment, Truland performed much of the work on the UMD Project at its own expense.

39.     IFIC provided a payment bond for the UMD Project for the "benefit of all persons supplying labor and materials in the prosecution of the work provided for in said [Clark UMD] Subcontract. . ." (the "UMD Bond").

40.     A true and correct copy of the UMD Bond (Bond No. 0583077) is attached hereto and incorporated herein as Exhibit D.

41.     Nationwide, as principal, is obligated on the UMD Bond for which the Obligee is Clark.

42.     Truland is an intended beneficiary of the UMD Bond.

7

43.     On June 18, 2014, Truland provided a timely Notice of Claim via certified mail to IFIC, Nationwide and Clark for monies due and owing to Truland on the UMD Project ("UMD Notice of Claim").

44.     A true and correct copy of the UMD Notice of Claim is attached hereto and incorporated herein as Exhibit E.

45.     Truland performed the Work for which Nationwide was responsible under the Clark UMD Subcontract.

46.     Clark paid Nationwide in excess of Four Million Six Hundred Thousand Dollars ($4,600,000) for work performed pursuant to the Clark UMD Subcontract.

47.     However, other than two joint checks issued by Clark to Truland and credits applied totaling $685,643.91, Truland has not received payment for any of the Work it performed on the UMD Project.

48.     Therefore, $5,134,538.53 remains unpaid for work performed by Truland through July 24, 2014.

49.     Despite the Receiver's repeated demands, Nationwide and IFIC have not issued any payments to the Receiver due under the Bond to which the Receiver is entitled under the Receiver Order.

**GENERAL ALLEGATIONS REGARDING TRAVEL PLAZA PROJECTS**

50.     Counts II, IV, and V of this dispute arise out of work performed by Truland on the Travel Plaza Projects.

51.     The Travel Plaza Projects are owned by the State of Maryland, Maryland Transportation Authority pursuant to a public-private partnership with Areas USA MDTP, LLC ("Travel Plaza Owner").

8

52.     The Travel Plaza Owner engaged Clark as the General Contractor on the Travel Plaza Projects.

53.     Clark entered into subcontracts with Nationwide for electrical subcontract work on the Travel Plaza Projects ("Clark TP Subcontracts").

54.     Truland supplied labor, materials and management support to assist Nationwide in the performance of its obligations under the Clark TP Subcontracts on the Travel Plaza Projects on a time and materials basis, with an agreed mark-up for overhead and profit of fifteen percent ("Truland TP Subcontract").

55.     Truland performed work on the Travel Plaza Projects for the benefit of Nationwide, Clark and the Travel Plaza Owner.

56.     Truland performed its work on the Travel Plaza Projects in a timely and workmanlike manner.

57.     Truland performed its work on the Travel Plaza Projects in accordance with the Truland TP Subcontract.

58.     Upon information and belief, Truland's work on the Chesapeake House Project has not been rejected.

59.     Upon information and belief, Truland's work on the MD House Project has not been rejected.

60.     Upon information and belief, Truland's work on the Chesapeake House Project has been accepted.

61.     Upon information and belief, Truland's work on the MD House Project has been accepted.

4814-9649-7452.6

62.     Despite numerous requests and demands by Truland and the Receiver, the Receiver has not been paid for the work performed by Truland on the MD House Project.

63.     Despite numerous requests and demands by Truland and the Receiver, the Receiver has not been paid for the work performed by Truland on the Chesapeake House Project.

64.     As of June 10, 2014, the total value of the Truland TP Subcontract on the Chesapeake House Project was $860,860.79.

65.     Truland submitted payment applications for work, which included labor, services and materials provided to the Chesapeake House Project by Truland totaling $860,860.79.

66.     Truland performed the Work for which Nationwide was responsible under the Clark TP Subcontract for the MD House Project.

67.     Clark paid Nationwide in excess of Three Million Two Hundred Thousand Dollars ($3,200,000) for the Work performed pursuant to the Clark TP Subcontract for the Chesapeake House Project.

68.     Truland only received payments on the Chesapeake House Project from Nationwide and Clark and credits applied totaling $180,382.21.

69.     Therefore, $680,478.58, plus interest, remains unpaid for work performed by Truland on the Chesapeake House Project through June 10, 2014.

70.     As of June 10, 2014, the total value of the Truland TP Subcontract on the MD House Project was $3,460,496.12.

71.     Truland submitted payment applications for work, which included labor, services and materials provided to the MD House Project by Truland, totaling $3,460,496.12.

72.     Truland performed the Work for which Nationwide was responsible under the Clark TP Subcontract for the MD House Project.

10

73.     Upon information and belief, Clark paid Nationwide in excess of Three Million Two Hundred Thousand Dollars ($3,200,000) for the Work performed pursuant to the Clark TP Subcontract for the MD House Project.

74.     However, Truland only received payments and applied credits on the MD House Project from Nationwide and Clark totaling $798,438.02.

75.     Therefore, $2,662,058.10, plus interest, remains unpaid for work performed by Truland on the MD House Project through June 10, 2014.

76.     Due to non-payment, Truland performed much of the work on the Travel Plaza Projects at its own expense.

77.     IFIC provided payment bonds for the Travel Plaza Projects for "the benefit of all persons supplying labor and material in the prosecution of the work provided for in said [Clark TP] subcontracts" (collectively, the "Travel Plaza Bonds").

78.     A true and correct copy of the Travel Plaza Bonds (Bond Nos. 0610082 and 0610086) are attached hereto and incorporated herein as Exhibit F.

79.     Nationwide, as principal, is obligated on the Travel Plaza Bonds for which the Obligee is Clark.

80.     Truland is an intended beneficiary of the Travel Plaza Bonds.

81.     On June 13, 2014, Truland provided a timely Notice of Claim via certified mail to Nationwide, IFIC and Clark for monies due and owing to Truland on the Travel Plaza Projects ("Travel Plaza Notice of Claim").

82.     A true and correct copy of the Travel Plaza Notice of Claim is attached hereto and incorporated herein as Exhibit G.

11

83.     Despite the Receiver's repeated demands, Nationwide and IFIC have not issued any payments to the Receiver.

**COUNT I**
**BREACH OF UMD BOND OBLIGATIONS**
***(RECEIVER V. IFIC)***

84.     Paragraphs 1-83 hereby are re-alleged and incorporated by reference.

85.     IFIC is obligated, pursuant to the UMD Bond, to pay Truland and now the Receiver for the labor, materials and services it furnished in the prosecution of the work at the UMD Project for the benefit of Nationwide, Clark and the UMD Owner, for which payment has not been made.

86.     Truland performed its obligations pursuant to the terms and conditions of the Truland UMD Subcontract in a timely and workmanlike manner.

87.     Truland was not paid in full for all of the labor and materials it furnished to the UMD Project.

88.     All conditions precedent to commencing an action against IFIC under the UMD Bond have been satisfied or waived.

89.     No payments to Truland or the Receiver for the amounts claimed under the UMD Bond have been made.

90.     IFIC has failed to satisfy its obligation to make payment to Truland pursuant to the terms of the UMD Bond.

91.     IFIC materially breached its contract with Truland, which has been damaged by that breach in excess of $5,134,538.53, exclusive of interest, attorneys' fees and costs, for which the Receiver is entitled to recover pursuant to the Receiver Order.

12

4814-9649-7452.6

92.     Pursuant to the Receiver Order, the $5,134,538.53, plus interest due to Truland on the UMD Project is part of the Receivership Property and is due and owing to the Receiver.

## COUNT II
## BREACH OF OBLIGATIONS UNDER TRAVEL PLAZA BONDS
### (RECEIVER v. IFIC)

93.     Paragraphs 1-18 and 50-82 hereby are re-alleged and incorporated by reference.

94.     IFIC is obligated, pursuant to the Travel Plaza Bonds, to pay Truland for the labor, materials and services it furnished in the prosecution of the work at the Travel Plaza Projects for the benefit of Nationwide, Clark and the Travel Plaza Owner, for which payment has not been made.

95.     Truland performed its obligations pursuant to the terms and conditions of the Truland TP Subcontracts in a timely and workmanlike manner.

96.     Truland was not paid in full for all of the labor and materials it furnished to the Travel Plaza Projects.

97.     All conditions precedent to commencing an action against IFIC under the Travel Plaza Bond have been satisfied or waived.

98.     No payments to Truland or the Receiver for the amounts claimed under the Travel Plaza Bond have been made.

99.     IFIC has failed to satisfy its obligation to make payment to Truland pursuant to the terms of the Travel Plaza Bonds.

100.    IFIC materially breached its contract with Truland for the Travel Plaza Projects, which has been damaged by that breach in excess of $3,342,536.68, exclusive of interest, attorneys' fees and costs, for which the Receiver is entitled to pursue pursuant to the Receiver.

13

101.    Pursuant to the Receiver Order, the $3,342,536.68, plus interest due to Truland on the Travel Plaza Projects is part of the Receivership Property and is due and owing to the Receiver.

## COUNT III
## BREACH OF TRULAND UMD SUBCONTRACT
### *(RECEIVER V. NATIONWIDE)*

102.    Paragraphs 1 to 18 and __ to ___ are hereby re-alleged and incorporated by reference.

103.    The Truland UMD Subcontract is a valid and enforceable subcontract whereby Truland agreed to furnish certain labor, materials and services to the UMD Project in exchange for payment therefor by Nationwide.

104.    Truland performed its obligations pursuant to the terms and conditions of the Truland UMD Subcontract in a satisfactory manner.

105.    Despite demand and at all times thereafter, Nationwide failed and refused to payment Truland the outstanding balance due $5,134,538.53, thereby materially breaching the Truland UMD Subcontract.

106.    Nationwide materially breached its contract with Truland on the UMD Project, which has been damaged by that breach in excess of $5,134,538.53, exclusive of interest, attorneys' fees and costs, for which the Receiver is entitled to pursue pursuant to the Receiver Order.  All conditions precedent to commencing an action against Nationwide under the Truland UMD Subcontract have been satisfied or waived.

107.    Pursuant to the Receiver Order, the $5,134,538.53, plus interest due to Truland on the Travel Plaza Projects is part of the Receivership Property and is due and owing to the Receiver.

4814-9649-7452.6

## COUNT IV
## BREACH OF TRULAND TP SUBCONTRACT
### *(RECEIVER V. NATIONWIDE)*

108.     Paragraphs 1-18 and __ to __ are hereby are re-alleged and incorporated by reference.

109.     The Truland TP Subcontract is a valid and enforceable subcontract whereby Truland agreed to furnish certain labor, materials and services to the Travel Plaza Projects in exchange for payment therefor by Nationwide.

110.     Truland performed all of its obligations pursuant to the terms and conditions of the Truland TP Subcontract in a satisfactory manner.

111.     Despite demand and at all times thereafter, Nationwide failed and refused to payment Truland the outstanding balance due $3,342,536.68, thereby materially breaching the Truland TP Subcontract.  Nationwide materially breached the Truland TP Subcontract with Truland on the Travel Plaza Projects, which was damaged by that breach in excess of $3,342,536.68, exclusive of interest, attorneys' fees and costs, for which the Receiver is entitled to pursue pursuant to the Receiver Order.

112.     All conditions precedent to commencing an action against Nationwide under the Truland TP Subcontract have been satisfied or waived.

113.     Pursuant to the Receiver Order, the $3,342,536.68 due to Truland on the Travel Plaza Projects is part of the Receivership Property and is due and owing to the Receiver.

## COUNT V
## VIOLATION OF MD. CODE REAL PROPERTY §§9-201, *ET. SEQ.*
### *(RECEIVER V. YOUNG AND HERBERT)*

114.     Paragraphs 1-__ are hereby are re-alleged and incorporated by reference.

115.     Upon information and belief, Young is the President and Chief Executive Officer of Nationwide.

4814-9649-7452.6

116.    Upon information and belief, Herbert is the Vice-President of Nationwide.

117.    Young and Herbert are responsible for the direction over or control of money held by Nationwide.

118.    The total amount due to Truland for work done and materials furnished under the Truland UMD Subcontract and the Truland TP Subcontracts was $10,141,539.35 ("Truland Total").

119.    Upon information and belief, Nationwide received over Eleven Million Two Hundred Thousand Dollars ($11,200,000) for work done and materials furnished under the Clark UMD Subcontract and Clark TP Subcontracts, including joint checks issued to Truland and its subcontractors (collectively, the "Nationwide Payments").

120.    The Nationwide Payments include substantial sums for work done and materials furnished by Truland.

121.    Out of the total Nationwide Payments exceeding $11,200,000, the total amount of payments and credits received by Truland from Nationwide and Clark on the Travel Plaza Projects and the UMD Project was $1,664,464.14 ("Truland Payments").

a.      Despite receiving more than Six Million Five Hundred Thousand Dollars ($6,500,000) on the Travel Plaza Projects, Nationwide only issued direct payments to Truland totaling $327,007.48 on the Travel Plaza Projects.  All remaining amounts applied toward the balance due to Truland on the Travel Plaza Projects were in the form of joint checks issued by Clark or credits.

b.      Despite receiving more than Four Million Five Hundred Thousand Dollars ($4,500,000) on the UMD Project, Nationwide did not issue a single direct payment to Truland on the UMD Project.  All amounts applied toward the balance

16

due to Truland on the UMD Project were in the form of joint checks issued by Clark or credits.

122.   Pursuant to Md. Code Real Property §§ 9-201, any moneys paid to Nationwide under the Clark UMD Subcontract and Clark TP Subcontracts for work done and materials furnished by Truland were required to be held in trust for purposes of paying Truland.

123.   Young knowingly and/or wrongfully retained the Nationwide Payments for purposes other than to pay Truland, for whom the money was to be held in trust for work and materials furnished on the UMD Project and the Travel Plaza Projects.

124.   Truland and now the Receiver is an intended beneficiary under the requirements of Md. Code Real Property §§ 9-201.

125.   Herbert knowingly and/or wrongfully retained the Nationwide Payments for purposes other than to pay Truland, for whom the money was to be held in trust for work and materials furnished on the UMD Project and the Travel Plaza Projects.

126.   Young and Herbert, as officers, directors, or managing agents of Nationwide, were trustees within the meaning of Md. Code Real Property § 9-201 and had direction over or control of money held in trust by a contractor or subcontractor under that statute.

127.   Young and Herbert are personally liable to the Receiver for the $8,477,075.21 due to Truland on the UMD Project and Travel Plaza Projects, as they breached their fiduciary duties to Truland under Md. Code Real Property § 9-201 and Truland has been damaged as a proximate result thereof, for which the Receiver is entitled to pursue pursuant to the Receiver Order.

## PRAYER FOR RELIEF

WHEREFORE, judgment is demanded as follows:

4814-9649-7452.6

a.   IFIC, Nationwide, Herbert and Young, jointly and severally, in the amount of

$8,477,075.21, or such other amount as may be proven at trial hereof, plus

interest, costs, penalties and attorneys' fees;

b.   and for such other and further relief as the Court deems just and proper.

DATED this ___ day of January, 2016

Respectfully submitted

Erika L. Morabito, VSB #44369
Brittany J. Nelson, VSB #81734
FOLEY & LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC  20007-5109
Telephone:     (202) 672-5300
Facsimile:     (202) 672-5399
Email:         emorabito@foley.com
               bnelson@foley.com

4814-9649-7452.6